[No. B022047. Second Dist., Div. Three. July 8, 1987.]

RICHARD M. CLEMENS, Plaintiff and Appellant, v.
AMERICAN WARRANTY CORPORATION et al., Defendants and
Respondents.

COUNSEL

Edwin M. Rosendahl for Plaintiff and Appellant.

Rissman, Winer & Blozan and Deborah E. Winer for Defendants and Respondents.

OPINION

KLEIN, P. J.— Plaintiff and appellant Richard M. Clemens (Clemens) appeals from a judgment of dismissal in favor of defendants and respondents American Warranty Corporation (AWC) and Rex Sluggett (Sluggett) (collectively, respondents).

Because the vehicle service contract (VSC) was not insurance, and because dismissal properly followed the sustaining of what was in effect an objection to all evidence, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 7, 1978, Clemens purchased from Steve Taub Porsche-Audi, Inc. (Dealer) a new 1978 Audi automobile. At the same time, Clemens also bought a five-year/50,000 mile VSC for $275. The VSC provided that, subject to a $25 deductible for each repair for each component covered, the Dealer would repair, replace or reimburse Clemens for mechanical breakdowns. The VSC further recited the Dealer had appointed AWC as administrator, and "[a]s the administrator, AWC ha[d] no liability to [customer] under this agreement."

Of the $275 paid by Clemens, the Dealer retained $125 and remitted $150 to AWC. AWC retained $50 as its administrative fee, and remitted $100 to United Equitable Insurance Company (United), its parent company. For the $100 which the Dealer paid to United through AWC, the Dealer received insurance coverage from United for any claims Clemens might file under the contract.

Between March 7, 1978, and March 6, 1981, Clemens had the Audi serviced by the Dealer on 24 occasions, without making any claims under the VSC. On March 7, 1981 (first breakdown), and May 14, 1981 (second breakdown), Clemens suffered two separate mechanical breakdowns and filed claims under the VSC. The claims were denied.

Following the denial of his claim for the first breakdown, Clemens filed a small claims action against the Dealer and AWC, and obtained the jurisdictional limit of a $750 judgment against the Dealer only.

The denial of the claim for the second breakdown by the Dealer resulted in Clemens's filing a complaint in superior court on October 14, 1981. Named as defendants were the Dealer, the Dealer's general manager Mark Terrell (Terrell), AWC, and AWC's claims manager Sluggett. Clemens's theory was that the VSC was a contract of insurance within the meaning of Insurance Code section 22,[2] and defendants had acted in bad faith in denying him benefits under the contract. A copy of the VSC was appended to the complaint and incorporated therein by reference.

---

[1] The facts are developed from the pleadings.

[2] All subsequent statutory references are to the Insurance Code, unless otherwise indicated.

In his first cause of action, Clemens alleged a tortious breach of the contractual covenant of good faith by the wrongful withholding of benefits due him under the VSC. In the second cause of action, Clemens pled defendants had engaged in deceit because at the time the VSC was entered into, they had no intention of performing. Clemens prayed for compensatory damages according to proof, general damages for emotional distress in the sum of $25,000, and $250,000 in punitive damages.

AWC and Sluggett denied the allegations and raised certain affirmative defenses, including negligence by Clemens in maintaining the Audi. AWC and Sluggett moved for a summary adjudication of various issues. The trial court granted the motion as to one issue only, narrowly ruling AWC was not a party to the VSC under its plain meaning.

At the time of trial on May 22, 1986, Clemens brought several motions *in limine*. AWC and Sluggett, in turn, filed six separate motions *in limine,* objecting to the introduction of evidence covering certain subjects, summarized as follows: (1) tort damages or punitive damages, and any evidence re AWC's wealth, on the theory the VSC was not insurance, but rather a motor vehicle service contract governed by Civil Code section 1794 et seq.; (2) any alleged breach of the VSC by AWC, because both breakdowns were subsumed into the small claims judgment, and said judgment found no liability on AWC's part, and further, because AWC was not even a party to the VSC; (3) any reference to United, AWC's parent, because, inter alia, Clemens had at no time raised an alter ego theory, United was never named as a defendant, AWC's relationship to United does not make AWC an insurer, and the Dealer's status as an insured of United is irrelevant; (4) Clemens' alleged status as a third-party beneficiary of any contract between AWC and the Dealer, because no express intention to benefit Clemens appeared from either the AWC/Dealer contract wherein AWC agreed to provide administrative services, or a related AWC/Dealer contract wherein the Dealer agreed to honor the VSC, and Clemens was at most an incidental beneficiary in both instances; (5) any reference to the small claims judgment because said judgment was not against AWC, and said judgment was paid in part by *United* on the Dealer's behalf, not by AWC; and finally, (6) any reference to the VSC as a contract of insurance, or to AWC as an insurer, because it was the clear intention of the Legislature to exclude motor vehicle service contracts sold in conjunction with the sale of an automobile from insurance regulation.

Clemens filed opposition and the motions *in limine* were argued May 23, 1986. Based thereon, the trial court excluded reference to the VSC as an insurance contract or as a contract of the kind which may give rise to a cause of action for tortious breach of the implied covenant of good faith and

fair dealing. It also ruled AWC and Sluggett were not parties to the VSC, and further, that a third-party beneficiary claim would not lie. The trial court also excluded any reference to United, or to the small claims action.

Upon the trial court's suggestion, AWC orally moved to dismiss both causes of action. On the motion to dismiss, AWC argued no breach of contract cause of action could be stated because (1) AWC and Sluggett were not parties to the VSC, and (2) the absence of an express intent in the AWC/Dealer contracts to benefit Clemens precluded Clemens from recovering under a third-party beneficiary theory.

With respect to the second cause of action alleging deceit in connection with the making of the VSC, respondents argued because they were not parties to the contract, a claim by Clemens that AWC and Sluggett entered into the VSC without any intention of performing could not stand.

The trial court granted the motion to dismiss the complaint as to AWC and Sluggett.[3]

Judgment of dismissal was entered on July 14, 1986. Clemens appeals.

### CONTENTIONS

Clemens contends: (1) the dismissal was a "nullity" because it lacked any recognized basis of support; (2) the VSC is a contract of insurance, so that an entity need not be an actual party to the contract to be held liable for the bad faith handling of an insurance claim; and (3) Clemens was a third-party beneficiary of the AWC/Dealer agreement.

### DISCUSSION

1. *Trial court properly dismissed both causes of action and, thereafter, the complaint as to AWC and Sluggett after granting motions in limine.*

a. *Clemens's argument.*

Clemens contends there is no procedural precedent for the manner in which dismissal occurred here. Because granted in the midst of the trial court's entertaining, and ruling on, motions *in limine,* Clemens maintains dismissal must be preceded by (1) the granting of a motion for judgment on the pleadings; (2) the sustaining of a demurrer without leave to amend to

---

[3] The Dealer and Terrell then settled with Clemens for $23,500.

the entire complaint; or (3) the sustaining of an objection to all evidence. Here, Clemens argues the trial court was of the belief the first cause of action stated a cause of action in contract, if not in tort, thereby eliminating the availability of any of the three alternatives.

Respondents maintain their six separate motions *in limine* collectively were directed at precluding the introduction of any evidence as to all issues purportedly set forth in Clemens's complaint. Respondents submit the dismissal below properly occurred after "objections to all evidence" were sustained.

b. *General principles.*

■ "Although not expressly authorized by statute, [a motion *in limine*] is recognized in decisions as a proper request which the trial court has inherent power to entertain and grant." (3 Witkin, Cal. Evidence (3d ed. 1986) § 2011, p. 1969.) The purpose of the motion "is to avoid the obviously futile attempt to 'unring the bell' in the event a motion to strike is granted in the proceedings before the jury." (*Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 337 [145 Cal.Rptr. 47].) The scope of such motion is any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial. (3 Witkin, *op. cit. supra,* at p. 1969; Evid. Code, § 352.)

■ Contrasted with motions *in limine* which seek to keep *particular items* of evidence from the jury, an "objection to all evidence" lies where a party's pleading is fatally defective. A defendant may object to the introduction of any and all evidence by a plaintiff who has failed to state a cause of action. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 272, p. 571.) In making such motion, the objecting party *seeks to end the trial* and obtain a favorable judgment, on the pleadings, without any evidence. (*Ibid.*) "An objection to the introduction of any evidence on the ground that a complaint fails to state a cause of action is in the nature of a general demurrer to the complaint or a motion by a defendant for judgment on the pleadings." (*Miller* v. *McLaglen* (1947) 82 Cal.App.2d 219, 223 [186 P.2d 48].) Accordingly, such motion is properly sustained where even if the plaintiff's allegations were proved, they would not establish a cause of action. (6 Witkin, *op. cit. supra,* at p. 572.)

c. *Application here.*

■ Motions *in limine* are ordinarily directed at particular items of evidence, rather than at a plaintiff's entire case. Here, however, the motions *in limine* were, in net effect, an "objection to all evidence" on the grounds

Clemens failed to state any cause of action as to respondents. ■ Following the sustaining of such objection, a separate motion for judgment on the pleadings is not essential, and an objection to all evidence which is sustained may be followed by a judgment in favor of the objecting party. (6 Witkin, *supra,* § 273, at pp. 572-573.)

■ While unorthodox, the irregularity here was nonprejudicial. The motions *in limine* were properly granted pursuant to the applicable law as set forth in the respondents' supporting papers. Had respondents next objected to the introduction of all evidence, such objection inevitably would have been sustained and a dismissal would have followed. Accordingly, the prejudice to Clemens from the procedural peculiarities was nonexistent. For the legal reasons set forth *infra,* dismissal was not inappropriate following the granting of respondents' motions *in limine* in this procedurally unusual case.

■ Ordinarily, in reviewing the sufficiency of a pleading, the plaintiff's allegations are taken as true. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) ■ Here, however, the VSC was appended to the complaint, and established it was an agreement between Clemens and the *Dealer.* The contract recited the Dealer had appointed AWC as administrator. Under California law, only a signatory to a contract may be liable for any breach. (*Gold* v. *Gibbons* (1960) 178 Cal.App.2d 517, 519 [3 Cal.Rptr. 117]; *Sessions* v. *Chrysler Corporation* (9th Cir. 1975) 517 F.2d 759, 760.) The involvement of AWC and Sluggett in the VSC, as alleged by Clemens, did not rise to the level of their being parties to the contract. Because AWC and Sluggett were not parties to the VSC, they could not be liable for a tortious breach or for deceit in connection with the making of said contract. Neither cause of action could be stated as to them.

■ Further, the complaint did not state a cause of action for insurance bad faith. As discussed in section 2, *infra,* the VSC as a matter of law is not a contract of insurance.

■ As for a third-party beneficiary theory, that too was absent from the pleading. Clemens did not seek relief on such a theory. He merely alleged at paragraph 12 of the complaint, within the tortious breach count, that he was a third-party beneficiary of the AWC/Dealer agreement. The complaint reflects Clemens did so in an effort to overcome the exculpatory language in the VSC, which stated "AWC has no liability to [buyer] under this agreement." Accordingly, the trial court properly excluded reference to Clemens's status as a third-party beneficiary.

■ Following the trial court's proper granting of respondents' motions *in limine,* which on this record amounted to the sustaining of an objection

to all evidence due to Clemens's failure to state any cause of action, dismissal was not prejudicial.

## 2. *VSC is not a contract of insurance.*

█ Clemens submits the VSC is a contract of insurance within the meaning of section 22,[4] and pursuant to the holding in *Nathanson* v. *Hertz Corp.* (1986) 183 Cal.App.3d 78 [227 Cal.Rptr. 799].[5] Clemens next relies on *Delos* v. *Farmers Group, Inc.* (1979) 93 Cal.App.3d 642 [155 Cal.Rptr. 843], for the proposition that a party may be held liable for the bad faith handling of an insurance claim even though it was not a party to the insurance contract in issue.

The VSC provided coverage for breakdowns "defined as a failure of a defective part, or faulty workmanship of a covered component . . . . It [did] not include gradual reduction in operating performance due to normal wear and tear."

*At the time the VSC was entered into,* section 116 read in pertinent part: "Automobile insurance . . . includes any contract of warranty, guaranty or suretyship which promises service, maintenance, parts replacement, repair, money or any other indemnity in event of loss of or damage to a motor vehicle or any part thereof from any cause, including loss of or damage to or loss of use of the motor vehicle by reason of depreciation, deterioration, wear and tear, use, obsolescence or breakage if made by a warrantor, surety or guarantor who or which as such is doing an insurance business. *Such a person is deemed to be doing an insurance business if the making of or proposing to make such contracts or other insurance contracts is done as a vocation and not as merely incidental to any other legitimate business or activity.*" (Italics added.)

The statute was subsequently revised and section 116, subdivision (c), applies, which *presently* provides: "The making of a contract covering only defects in material and workmanship, . . . in exchange for a separately stated charge where it is merely incidental to the business of selling or leasing automobiles, shall not be deemed insurance, *provided, that the maker of the contract has an insurance policy with an admitted automobile insurer providing coverage for the making of those contracts.*" (Italics added.)

---

[4] Section 22 provides: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

[5] *Nathanson* is wholly inapposite, as it deals, not with an extended vehicle service contract, but rather with an automobile rental corporation which issued liability insurance to renters, was self-insured, and was engaged in the liability insurance business in a substantial manner.

The 1983 amendment that resulted in the present form of section 116 was intended to protect the expectations of consumers who purchase extended service contracts from automobile dealers who are subsequently unable to honor their obligations.[6] The new section 116 gave dealers a choice between either purchasing some form of insurance or becoming an insurer subject to the provisions of the Insurance Code and regulation by the Department of Insurance.

In sum, the pre-1983 law classified extended service contracts as automobile insurance *only if* the maker of the contract did so as a vocation and not merely as incidental to any other business activity.[7] The 1983 amendment broadened the definition of automobile insurance to extended service contracts sold as an incident to the business of selling or leasing automobiles, *unless* the maker of the contract is covered by an insurance policy which assumes liability created by the contract.

As indicated, the subject VSC was entered into in 1978. The Dealer at that time purchased insurance from United to cover the VSC, although not required to do so. The VSC was sold by the Dealer as incidental to the business of selling automobiles. Accordingly, it is not a contract of insurance, under either the old or new section 116.

Clemens concedes if the Dealer had acted alone without appointing AWC as administrator, the VSC would *not* be insurance within the meaning of section 116. However, the mere fact the Dealer appointed AWC as administrator did not transform AWC into an insurer. It would be anomalous and inconsistent to hold that while the Dealer who incidentally sold

---

[6] Pursuant to Evidence Code sections 452, subdivision (c), and 459, we take judicial notice of certain legislative materials in our quest for legislative intent.

[7] The Legislative Counsel's Digest of Senate Bill No. 1025 (1983-1984 Reg. Sess.) states: "Under existing law, automobile insurance includes insurance of automobile owners, users, dealers, or others against incident hazards, and also includes any contract of warranty, guaranty or suretyship which promises service, maintenance, parts replacement, repair, money or any other indemnity in the event of loss of or damage to a motor vehicle, as specified, if such contract is made by a warrantor or guarantor who is doing an insurance business. A person is deemed to be doing an insurance business if the making of or proposing to make such contracts or other insurance contracts is done as a vocation and not as merely incidental to any other legitimate business or activity. [¶] This bill would provide that the making of a contract covering only defects of material and workmanship in exchange for a separately stated charge where it is merely incidental to the business of selling or leasing automobiles shall not be deemed insurance, provided, the maker of the contract has an insurance policy with an admitted automobile insurer providing coverage for the performance of those contracts. Requirements of the section which defines automobile insurance would not apply where the maker is a manufacturer, distributor, or importer of automobiles. [¶] This bill also would delete the above provision of existing law as to when a person is deemed to be doing an insurance business." (4 Stats. 1983 (Reg. Sess.) Summary Dig., p. 380.)

the VSC was not an insurer, AWC, as the Dealer's appointee to administer said VSC, was engaged in the business of insurance.[8]

The trial court properly excluded any reference to the VSC as insurance.

3. *Contention re third-party beneficiary status without merit.*

██ Clemens argues the fact that AWC was not a party signatory to the VSC is not dispositive, for the additional reason he was an intended third-party beneficiary of the AWC/Dealer agreement. Clemens maintains there could be no reason for the AWC/Dealer contract or the United policy other than to benefit VSC holders. Clemens did not allege he was a third-party beneficiary of the Dealer/United contract. Accordingly, we limit our discussion to his rights, if any, under the AWC/Dealer agreement for administrative services. Said contract provided that in exchange for a share of the $275 premium, AWC would procure a United policy for the Dealer.

The rule relating to third-party beneficiary contracts is codified in Civil Code section 1559 as follows: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." ██ The statute excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 658].)

It is not necessary that the contract identify or refer to the third party by name, and it is sufficient if it can be shown the claimant is of a class of persons for whose benefit it was made. (*Marina Tenants Assn.* v. *Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 128 [226 Cal.Rptr. 321].) ██ *Marina* held in ruling on a demurrer, where a contract is ambiguous, an allegation of intended beneficiary status must be accepted as correct unless the pleading places a clearly erroneous construction upon the agreement. (*Id.,* at p. 135.)

██ However, there is nothing even ambiguous about the AWC/Dealer contract in this regard. AWC's procuring insurance for the Dealer inured to the Dealer's benefit, and no express intent to benefit Clemens appears from the contract. Moreover, the AWC/Dealer contract predated the 1983 amendment to section 116, set forth, *supra.* Prior to the revision which was enacted to protect consumers by prodding auto dealers into buying insurance, it is most unlikely the Dealer sought the United policy for Clemens's benefit.

---

[8] Civil Code section 1794.41, added in 1985, specifically deals with motor vehicle service contracts and enumerates their necessary provisions.

Because Clemens was merely an incidental beneficiary of the AWC/Dealer contract, the trial court properly granted the motion *in limine* to exclude reference to Clemens as a third-party beneficiary.

## CONCLUSION

The trial court's dismissal of the action as to AWC and Sluggett upon sustaining their objection to all evidence by way of motions *in limine* was nonprejudicial. The VSC was not a contract of insurance. Clemens was merely an incidental beneficiary of the AWC/Dealer contract.

## DISPOSITION

The judgment is affirmed. Each party to bear respective costs on appeal.

Lui, J., and Danielson, J., concurred.