Filed 5/23/16  Morris v. First Bethany Missionary Baptist Church CA2/3
Received for posting 5/24/16

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MELVIN MORRIS,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>FIRST BETHANY MISSIONARY BAPTIST CHURCH,<br><br>　　Defendant and Appellant. | B263197<br><br>(Los Angeles County<br>Super. Ct. No. BC549393) |


　　APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

　　Regan & Associates, James J. Regan and Lorne Lilienthal for Plaintiff and Respondent.

　　The Community Law Firm and Atyria S. Clark for Defendant and Appellant.

Defendant and appellant First Bethany Missionary Baptist Church (Church) appeals a judgment in an unlawful detainer action in favor of plaintiff and respondent Melvin Morris (Morris).

We conclude the trial court properly determined that Church was barred from disputing Morris's title to the subject real property because the issue of Church's ownership of the property previously had been adjudicated against Church. Therefore, the judgment in favor of Morris is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Church was the owner of real property located at 4921 South Figueroa Street in Los Angeles (the 4921 property) as well as adjacent real property located at 4955 South Figueroa (the 4955 property).[1] One of the properties is improved with a church structure as well as an additional 42 parking spaces, while the other property is improved with a 46-space parking lot.

In 2006, Church contracted with Durousseau & Associates, Inc. (Durousseau) to perform electrical work on its premises. In 2008, Durousseau filed a complaint against Church for breach of contract, common counts, and foreclosure on mechanic's lien, and alleged that Church had defaulted on payment of $36,500. On July 22, 2009, Durousseau secured a judgment against Church and initiated foreclosure proceedings.

To avoid losing its property in a sheriff's sale, Church entered into an agreement with Morris for satisfaction of the judgment lien. On July 22, 2009, on Church letterhead, Church's Pastor McClain (McClain) and Morris entered into a one-page written agreement for the sale of the 4921 property to Morris. On July 22, 2009, McClain also executed a grant deed to Morris, which was recorded on the same date. The documentation was inconsistent. The one-page written agreement specified only the 4921 property, the face of the grant deed showed the assessor's parcel number for only

---

[1]     The 4955 property was also known as 4951 South Figueroa (the 4951 property).

2

the 4955 property (APN 5018-022-050), and the legal description in Exhibit A to the grant deed specified *both* the 4921 property and the 4955 property.

Exhibit A to the grant deed identified the subject real property being conveyed as follows: "PARCEL 1: LOTS 1, 2, AND 3 OF THE LEWIS FIGUEROA STREET TRACT AS PER MAP RECORDED IN BOOK 7, PAGE 141 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. [¶] PARCEL 2: LOTS 47, 48, AND 49 OF THE LEWIS FIGUEROA STREET TRACT AS PER MAP RECORDED IN BOOK 7, PAGE 141 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. [¶] PARCEL 3: LOT 3 OF THE WARE VILLA TRACT AS PER MAP RECORDED IN BOOK 7, PAGE 186 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY." Parcel 1 is the 4921 property, and Parcel 2 is the 4955 property.[2]

The gravamen of this litigation is Church's allegation that the legal description attached to the grant deed that Morris filed with the county recorder differed from the legal description attached to the grant deed that McClain actually signed. Church asserts it agreed to convey solely the 4955 property to Morris, but the grant deed (with legal description attached) recorded by Morris referenced both the 4955 and the 4921 properties.

1. *The first action (No. BC419680): Morris versus Church.*

On August 12, 2009, Morris filed suit against Church (the *Morris* action). In the operative second amended complaint filed December 21, 2009, Morris alleged he purchased the 4921 property from Church pursuant to an agreement dated July 22, 2009, but Church failed to convey title to said property. By way of relief, Morris sought, inter alia, damages, specific performance and rescission.

Church answered the complaint but did not file a cross-complaint in that action.

---

[2]     The 4955 property subsequently was sold at public auction for Morris's failure to pay outstanding property taxes. The 4955 property is not the subject of this appeal, which solely concerns ownership of the 4921 property. Parcel 3, the third parcel mentioned in exhibit A to the grant deed, also is not at issue.

On October 29, 2010, fourteen months after filing suit, Morris voluntarily dismissed his action against Church.

2. *The second action (No. BC450418): Church sues Morris for declaratory relief.*

On December 2, 2010, shortly after Morris dismissed his action, Church filed a declaratory relief action against Morris (the *Church* action) with respect to ownership of the 4921 property. Church pled that after the grant deed was recorded, McClain discovered that the legal description that was attached to the grant deed that he executed was not the same as the legal description attached to the grant deed that Morris filed with the county recorder; the grant deed that was recorded purported to convey both the 4921 property and the 4955 property to Morris, "even though the parties never agreed to convey both parcels of real estate in exchange for the $48,344.00 [Morris] paid to McClain as consideration for the exchange."

On October 28, 2011, the trial court sustained Morris' demurrer to the complaint without leave to amend, stating: "Any claim the Church had on the property would have been the province of a compulsory cross-complaint in the prior action. California Code of Civil Procedure section 426.10(c) and California Code of Civil Procedure section 426.30.[3] Church is barred from bringing a new action after the prior one has been resolved." On September 26, 2013, the trial court entered judgment in favor of Morris and against Church.

On November 22, 2013, Church filed notice of appeal from the September 26, 2013 judgment. On November 10, 2014, after the matter was fully briefed, this court dismissed the appeal at Church's request.

---

3    All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

3. *The third action (the instant action) (No. BC549393): Morris's complaint against Church for unlawful detainer after sale.*

The third action, which is the subject of this appeal, is Morris's complaint against Church for unlawful detainer after sale, filed on June 20, 2014. Morris alleged that as the owner of the 4921 property, he was entitled to possession of the property from Church, which had refused to deliver possession of the property. The complaint sought possession of the premises as well as damages for "unlawful detention" of the Property, but Morris subsequently withdrew his claim for damages and elected to proceed solely on the issue of possession.

Church filed an answer in which it denied that Morris had purchased the 4921 property on July 22, 2009, and denied that Morris was the owner of the subject real property. Church's answer also asserted various affirmative defenses, including the unlawful detainer complaint's failure to allege facts sufficient to state a cause of action, waiver, laches, consent by Morris to Church's continued possession of the property, lack of consideration and estoppel.

The matter was set for a jury trial. In advance of the final status conference, Morris filed three motions in limine (MILs).

MIL No. 1 sought to preclude Church from introducing any evidence, commenting upon, or making references that Morris had obtained title to the property from Church fraudulently, wrongfully, or inequitably. Morris argued that previously, in the *Church* action, Church already had raised those claims and they had been adjudicated in Morris's favor. Further, under California law, issues relating to wrongful acquisition of title are beyond the scope of unlawful detainer proceedings and are inadmissible therein.

MIL No. 2 sought to preclude Church from presenting evidence or argument that it was entitled to retain possession of the property based upon defenses of waiver, consent, laches or estoppel. Morris anticipated that Church would argue that these defenses were supported by the fact that Morris allegedly delayed filing the unlawful detainer action for

5

five years after acquiring title, when in fact the parties had been embroiled in litigation from the time of Morris's acquisition five years earlier.

MIL No. 3 sought to preclude Church from presenting any evidence of its purported ownership rights to the subject real property on the ground that Church's ownership claim was barred by the doctrine of collateral estoppel. Morris argued the trial court had dismissed the *Church* action, the second action, on the ground that Church's suit was barred by its failure to file a compulsory cross-complaint in the first action, and therefore all issues concerning Church's property rights now were precluded.

In opposition to MIL No. 3 (the record does not contain Church's opposition to MILs No. 1 or No. 2), Church argued the issue of title to the property had not been litigated or adjudicated by any court and therefore the doctrine of collateral estoppel did not apply. Church asserted the demurrer in the second action was sustained purely on a procedural ground, i.e., the compulsory cross-complaint rule, and there had not been a judgment on the merits of the case involving title to the property. Church also contended title was not at issue in the current unlawful detainer action, and Church was not requesting the court to make a determination that Church was the owner of the property; rather, Church merely was denying that Morris was the owner of the 4921 property, on the ground that Morris lacked "good, record title to that property." According to Church, Morris had a defective grant deed, and Church should be able to present evidence to dispute Morris's claim he was the owner of the property.

Church also filed a motion for monetary sanctions (Code Civ. Proc., § 128.7) on the ground the unlawful detainer complaint lacked evidentiary and legal support and was brought for an improper purpose.

At the final status conference, after hearing arguments of counsel, the trial court granted Morris's three MILs and denied Church's motion for sanctions. The trial court explained: "I believe based upon the procedural history of the case which I summarized earlier today, as well as the relevant case law, that it's too late at this point in time for the church to raise an issue of title. And having read the papers and having heard further

6

from counsel this morning, it appears that the only issue that the defendant would like to raise is that the plaintiff has no title on the basis of an alleged discrepancy in the recorded instrument on July 22, [20]09.  [¶]  Previous courts have ruled that that attack is untimely. I think it's also untimely for the reasons indicated.  [¶]  And finally, I think having ruled in that fashion, there are no triable issues of fact for either judge or a jury.  [¶] Ultimately, the court finds that the plaintiff is entitled to judgment in this case."

On February 24, 2015, the trial court entered judgment on the pleadings in favor of Morris, stating:  "On the basis of granting MIL No. 3, the Court hereby finds that the Answer is insufficient and that Church has failed to assert any valid defenses in its answer on the UD Action, and on the basis that judicial notice was taken of Instrument No. 20091112277 [the grant deed recorded on July 22, 2009], the Court further finds that Morris is entitled to judgment as a matter of law on the UD Action."

On April 2, 2015, Church filed a timely notice of appeal from the judgment.

## CONTENTS

Church contends:  the trial court erroneously deprived it of its constitutional right to a jury trial; the trial court erred in granting the motions in limine as a substitute for a motion for judgment on the pleadings; and the trial court abused its discretion in denying Church's motion for sanctions.

## DISCUSSION

1. *No merit to Church's contention the trial court's resolution of the entire case by way of motions in limine deprived Church of its constitutional right to a jury trial*.

As this court explained in *Clemens v. American Warranty Corp*. (1987) 193 Cal.App.3d 444, where the trial court dismissed an action after granting various motions in limine (*id*. at pp. 449-450), "[m]otions *in limine* are ordinarily directed at particular items of evidence, rather than at a plaintiff's entire case.  Here, however, the motions *in limine* were, in net effect, an 'objection to all evidence' on the grounds [plaintiff] failed to state any cause of action as to respondents.  Following the sustaining of such objection, a separate motion for judgment on the pleadings is not essential, and an objection to all

7

evidence which is sustained may be followed by a judgment in favor of the objecting party. (6 Witkin, [Cal. Procedure (3d ed. 1985) Proceedings Without Trial] § 273, at pp. 572–573.)" (*Id.* at pp. 451-452; see now 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 200, p. 640.)

In the instant case, the net effect of the trial court's order granting the three MILs was to eliminate Church's defenses to Morris's suit for possession of the premises, so as to entitle Morris to judgment on his complaint. [4]

2. *Trial court properly entered judgment for possession in favor of Morris, following grant of his three motions in limine.*

a. *MIL No. 1; exclusion of evidence relating to Morris's acquisition of title.*

The order granting MIL No. 1 precluded Church in the unlawful detainer proceeding from introducing any evidence, commenting upon, or making references that Morris had obtained title to the property from Church fraudulently, wrongfully, or inequitably. The trial court's order granting MIL No. 1 was proper.

In unlawful detainer proceedings, "ordinarily the only triable issue is the right to possession of the disputed premises, along with incidental damages resulting from the unlawful detention. [Citations.] Ordinarily, issues respecting the title to the property cannot be adjudicated in an unlawful detainer action. [Citations.] The denial of certain procedural rights enjoyed by litigants in ordinary actions is deemed necessary in order to prevent frustration of the summary proceedings by the introduction of delays and extraneous issues. [Citations.] [¶] However, the trial court has the power to consolidate an unlawful detainer proceeding with a simultaneously pending action in which title to the property is in issue. That is because a successful claim of title by the tenant would defeat the landlord's right to possession. [Citation.] When an unlawful detainer

---

[4] A plaintiff may obtain judgment on the pleadings where the complaint states facts sufficient to constitute a cause of action, and the answer neither raises any material issue nor states a defense. (*Adjustment Corp. v. Hollywood Hardware & Paint Co.* (1939) 35 Cal.App.2d 566, 569-570.)

proceeding and an unlimited action concerning title to the property are simultaneously pending, the trial court in which the unlimited action is pending may stay the unlawful detainer action until the issue of title is resolved in the unlimited action, or it may consolidate the actions. [Citations.]" (*Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 385.)

Here, on November 7, 2014, while Church's declaratory relief action was pending on appeal, the trial court duly consolidated the *Church* action with the unlawful detainer action, designating the unlawful detainer proceeding as the lead case.[5][6] Three days later, Church dismissed its appeal in the declaratory relief action. Thus, at the time the MILs were heard and granted, there was no longer a pending civil action concerning title to the real property.

Consequently, Church did have the opportunity to litigate its title dispute with Morris in the *Church* action for declaratory relief. In that action, the trial court sustained Morris's demurrer without leave to amend and Church appealed. Once the *Church* action terminated with Church's voluntary dismissal of its appeal, Church could not relitigate its title dispute in the context of the instant unlawful detainer action.

Accordingly, the trial court properly granted MIL No. 1, thereby precluding Church in the unlawful detainer proceeding from introducing any evidence, commenting upon, or making references that Morris had obtained title to the property from Church fraudulently, wrongfully, or inequitably.[7]

---

[5]     The consolidation order's reference to BC419680 rather than BC450418 was obviously a clerical error. BC419680, the *Morris* action, terminated in 2010. BC450418, the *Church* action, was an active case which was pending on appeal.

[6]     By consolidating the two actions, in the event the declaratory relief action were to be reversed on appeal and remanded, Church's action for declaratory relief would have been heard in conjunction with the unlawful detainer proceeding.

[7]     We note the trial court in the unlawful detainer action did make a limited inquiry into the basis of Morris's title before awarding him possession of the 4921 property. (See *Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465.) In ruling on the matter, the trial court took judicial notice of the grant deed executed and

b. *MIL No. 2; exclusion of Church's evidence that it was entitled to retain possession of the property based upon defenses of waiver, consent, laches or estoppel.*

MIL No. 2 anticipated that Church would assert it was entitled to retain possession of the premises based upon defenses of waiver, consent, laches, or estoppel, on the theory that Morris purportedly delayed filing his unlawful detainer action for five years after acquiring title. Morris argued that none of those defenses applied because the parties had been litigating ownership of the property since 2009.

We agree with Morris that given the chronology of this litigation, Church's assertion that Morris "sat on his rights" is unsupported. Litigation of this property dispute has been ongoing since 2009. Further, Morris filed the instant unlawful detainer action in June 2014, during the pendency of Church's appeal from the dismissal of its declaratory relief action. Under these circumstances, the grant of MIL No. 2 was proper.

c. *MIL No. 3; exclusion of evidence of Church's purported ownership of the 4921 property.*

MIL No. 3 sought to preclude Church from presenting any evidence of its purported ownership rights in the subject real property, on the ground that Church's ownership claim was barred by the doctrine of collateral estoppel. Morris argued the second action (the *Church* action for declaratory relief) already had been dismissed on the ground it was barred by Church's failure to file a compulsory cross-complaint in the initial *Morris* action, and as a result, all issues concerning Church's purported ownership of the 4921 property now were precluded. The trial court in the instant unlawful detainer matter agreed, stating "based upon the procedural history of the case . . . as well as the relevant case law, . . . it's too late at this point in time for the church to raise an issue of title." As explained, the trial court's ruling herein was proper.

_____

recorded on July 22, 2009, which evidenced Morris's title to both the 4921 property and the 4955 property, by reference to the properties' respective assessor's parcel numbers and legal descriptions.

In the first action, initiated by Morris, Church did not file a compulsory cross-complaint alleging an ownership interest in the subject real property. The pertinent statute, section 426.30, provides in pertinent part at subdivision (a): "[I]f a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." The term "related cause of action" is defined by section 426.10, subdivision (c), as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." Since section 426.30 "bars claims which the party failed to assert by cross-complaint in a previous action arising from the same occurrence, it necessarily bars issues which were never litigated and never actually decided." (*Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1157.) Thus, the trial court in the *Church* action ruled that the compulsory cross-complaint rule barred Church from litigating in the second action, the *Church* action for declaratory relief, its claim that it had an ownership interest in the 4921 property, a claim that it had failed to raise by way of a cross-complaint in the first action, i.e., the *Morris* action.

Pursuant to the compulsory cross-complaint rule, the second action, Church's suit against Morris for declaratory relief with respect to ownership of the 4921 property, was dismissed by the trial court following the sustaining of Morris's demurrer without leave to amend. Church appealed the dismissal of the second action but later abandoned its appeal. At that juncture, the trial court's judgment in the *Church* action became final and binding.[8]

---

[8] Even assuming that Church at one time could have argued that the compulsory cross-complaint rule does not apply under the circumstances of this case, that issue is foreclosed. The trial court's order in the *Church* action, sustaining Morris's demurrer without leave to amend pursuant to the compulsory cross-complaint rule, is final and binding. Therefore, Church cannot resist the unlawful detainer action by disputing Morris's title to the property.

The issue then becomes the impact of the two prior proceedings on Church's ability in the instant unlawful detainer action to dispute Morris's ownership of the 4921 property. Church failed in the first case, the *Morris* action, to file a compulsory cross-complaint asserting an ownership interest in the 4921 property. Thereafter, in the second case, the *Church* action, Church suffered an involuntary dismissal due to its inability to plead a viable declaratory relief claim with respect to its alleged ownership of the 4921 property, and then abandoned its appeal from the judgment of dismissal. These circumstances rendered Church incapable of defending the unlawful detainer action on the basis that Morris was not the owner of the 4921 property and not entitled to possession thereof.

The dismissal of the *Church* action for declaratory relief, following the sustaining of Morris's demurrer without leave to amend, amounted to a final judgment with respect to Church's alleged ownership of the subject real property. A final judgment " 'rendered upon the merits by a court having jurisdiction of the cause, is conclusive of the rights of the parties and those in privity with them, and is a complete bar to a new suit between them on the same cause of action. This is the general doctrine of *res judicata*.' " (*Goddard v. Security Title Insurance & Guarantee Co.* (1939) 14 Cal.2d 47, 51.) A judgment not rendered on the merits does not operate as a bar. (*Id*. at p. 52.) A judgment " 'based upon the sustaining of a special demurrer for technical or formal defects is clearly not on the merits and is not a bar to the filing of a new action. [Citation.] . . . A judgment given after the sustaining of a general demurrer on a ground of substance, for example, that an absolute defense is disclosed by the allegations of the complaint, may be deemed a judgment on the merits, and conclusive in a subsequent suit; and the same is true where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action. [Citations.] But even a judgment on general demurrer may not be on the merits, for the defects set up may be technical or formal, and the plaintiff may in such case by a different pleading eliminate them or correct the omissions and allege facts constituting a good cause of action, in

12

proper form. Where such a new and sufficient complaint is filed, the prior judgment on demurrer will not be a bar. [Citations.] This result has frequently been reached where the failure of the first complaint was in misconceiving the remedy, or framing the complaint on the wrong form of action.' " (*Id*. at p. 52.)

Applying these principles to the case before us, we look to the trial court's resolution of the second action, the *Church* action. In sustaining Morris's demurrer without leave to amend, the trial court in the second action ruled that "[a]ny claim the Church had on the property would have been the province of a compulsory cross-complaint in the prior action." This ruling in the second action sustaining the demurrer without leave to amend was on the merits because the defect on which the order was based -- a failure by Church to file a compulsory cross-complaint in the original action -- is not one that Church can cure by filing a new complaint. As a result, the trial court in the instant case properly held that Church could not defend the unlawful detainer action by challenging Morris's ownership of the 4921 property.

### d. *Church's additional arguments*.

In an attempt to preserve its challenge to Morris's ownership of the 4921 property, Church argues that it was not until October 29, 2010, when Morris dismissed the initial action, that Church discovered that the grant deed recorded on July 22, 2009 purported to transfer title to the 4921 property. Church's claim of delayed discovery is unavailing. As the trial court ruled, in an action for quiet title based on fraud or mistake, the statute of limitations is three years from the discovery of the facts constituting the fraud or mistake. (*Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 615.) Moreover, after Church allegedly discovered the fraud, it unsuccessfully brought a declaratory relief action against Morris in December 2010. At this juncture, the issue of delayed discovery is an irrelevancy.

Church's arguments that Morris's deed to the 4921 property is void because it was obtained by fraud, and that there was a lack of consideration for the deed, suffer from the same infirmities discussed above.

13

Church also contends that in opposing the unlawful detainer complaint, it could have contended that an unidentified third party, rather than Morris or Church, was the owner of the 4921 property. This assertion that a third party owns the property is unsupported by the record and also is at odds with Church's theory of the case that Morris "fraudulently" recorded title to the 4921 property.

3. *No error in denial of Church's motion for sanctions*.

Having determined the trial court properly entered judgment in favor of Morris, Church's contention that the trial court abused its discretion in denying Church's request for sanctions necessarily fails.

## DISPOSITION

The judgment is affirmed. Morris shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

ALDRICH, J.

HOGUE, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14