[Civ. No. 18659. First Dist., Div. Two. Mar. 2, 1960.]

LOUIS GOLD, Appellant, v. MARGARET M. GIBBONS et al., Respondents.

Twohig, Weingarten & Haas and Myron P. Haas for Appellant.

Campbell, McHarry & Walker and Charles P. McHarry for Respondents.

PAULSEN, J. pro tem.*—This is an appeal from a judgment entered after the sustaining of a general demurrer to plaintiff's second amended complaint. Plaintiff elected not to amend.

Louis Gold as secretary-treasurer of the Hotel Restaurant Employees' and Bartenders' International Union, Local Number 483, commenced this action for damages and for an injunction against four named defendants, who will be referred to herein as the respondents, and also named as defendants the Blue Bird Company, Inc., Edward A. Hathaway and Mrs. V. L. Piercy, who will be referred to as the owners. The owners are not parties to this appeal.

Disregarding parts of the complaint that have no direct bearing on the questions raised, it is alleged that the owners, as operators of the Blue Bird Restaurant, entered into an original and supplemental contract whereby they recognized the union as the exclusive bargaining agent of the restaurant employees and thereby agreed to hire only members of the union; that on or about March 8, 1957, defendant Piercy sold

---

*Judge pro tem., assigned by Chairman of Judicial Council.

the restaurant to respondents; "That at the time of said sale on or about March 8, 1957 the said agreement between said local labor organization and defendant MRS. V. L. PIERCY was in full force and effect. That the premises of said BLUE BIRD RESTAURANT were posted with notices commonly referred to as 'union house cards' signifying that the said BLUE BIRD RESTAURANT was operating under the terms and provisions of a union contract. That defendants, MARGARET M. GIBBONS, MARY C. HAMER, RUHE V. LINN, and SARAH ANDERSON [respondents] were aware of the agreements designated 'Exhibits A and B' specifically including the portion of Section 6 of said 'Exhibit A' providing as follows: 'This agreement shall be binding on any successor or assignee of the parties, and said parties shall make the same a binding condition of any succession, sale or assignment.' "

It is then alleged that respondents "entered into the purchase . . . of said restaurant . . . and thereby assumed the obligation of the contract"; that although the union employees had fulfilled all the conditions of their employment, respondents discharged them and employed persons who were not members of the union.

Several causes of action are set forth in the complaint, claiming damages of various kinds, but all are dependent on appellant's contention that respondents were bound by the terms of the agreement and appellant has confined his attack to that question.

The demurrer was sustained on the ground that the complaint contained no facts tending to show that respondents had assumed the obligations of the contract and therefore there was no privity of contract. Appellant relies solely upon the wording of the contract to establish his claims.

 There can be no contract unless the minds of the parties have met and mutually agreed. (*German Sav. & Loan Soc.* v. *McLellan*, 154 Cal. 710 [99 P. 194]; *Rancho San Carlos, Inc.* v. *Bank of Italy*, 123 Cal.App. 291 [11 P.2d 424]; *Webster* v. *Parra*, 72 Cal.App. 639 [237 P. 804].)

 Breach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations. (*Galusha* v. *Fraser*, 178 Cal. 653 [174 P. 311]; *Tiffany & Co.* v. *Spreckels*, 202 Cal. 778 [262 P. 742]; *Gause* v. *Pacific Gas & Electric Co.*, 60 Cal.App. 360 [212 P. 922].)

 Appellant asserts that because of the display of union signs in the restaurant, respondents knew of the con-

tract, but he has alleged no facts to show that respondents had ever seen the signs or, if so, did anything to warrant the conclusion that they had assumed the obligations thereof. ■ It is said in *Travelers Fire Ins. Co.* v. *Brock & Co.*, 47 Cal.App.2d 387 at page 392 [118 P.2d 25] :

" 'A contract implied in fact is one not expressed by the parties, but implied from facts and circumstances showing a mutual intention to contract.' (17 Corpus Juris Secundum, p. 318.) Without such mutual intention there can be no contract in fact; hence the assumption, intention or expectation of either party alone, not made known to the other, can give rise to no inference of an implied contract in accordance therewith. . . .''

Two New York cases are directly in point : *Carouso* v. *Empire Case Goods Co.*, 271 App.Div. 149 [63 N.Y.S.2d 35], and *Robertson* v. *Midland Windsor, Inc.*, 116 N.Y.S.2d 544. In the Carouso case, the defendant company had contracted with certain employees to give them a vacation with pay. Without informing the union, the company sold to one Rose who did not pay the employees during the vacation period. The employees sued both the buyer and seller. The court held that Rose was not liable as he was not a party to the union contract and had assumed no liability thereunder. In the Robertson case, Robertson was the superintendent of an apartment building and as part of his compensation had been given an apartment therein. The original owner of the building [Robertson's employer] sold the building to Midland Windsor. The new owner sought to evict Robertson who resisted on the ground that he was protected by a union contract with the original owner. The court said ''Neither a relationship of employer and employee nor of landlord and tenant exists between the parties hereto; nor was there any agreement of this defendant with the union as bargaining agent for any employees of the premises . . . there is nothing in the instant application'' to indicate that Midland Windsor had assumed the obligations of the union contract.

■ Appellant seeks to avoid the effect of the well-established rules of privity of contract by arguing that they do not apply to collective bargaining agreements because of public policy as expressed in section 923 of the California Labor Code. The purpose of that section was to uphold the right of employees to bargaining collectively and to place them as a group on an equal footing with the employer, or has been frequently said ''to balance the equation.'' (*Shafer* v. *Registered*

*Pharmacists Union,* 16 Cal.2d 379 [106 P.2d 403] ; *Levy* v. *Superior Court,* 15 Cal.2d 692 [104 P.2d 770, 129 A.L.R. 956].) The section deals with employer and employee relationships and was not designed to impose obligations on third parties without their consent.

Finally, appellant argues that the federal courts have ruled in accordance with his contentions and that if both federal and state governments have recognized and encouraged collective bargaining, their decisions made under the Labor Management Relations Act should control here.

The parties to these contracts were not engaged in interstate commerce and that act is not applicable. (*Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local 88,* 53 Cal.2d 455 [2 Cal.Rptr. 470, 349 P.2d 76].) In cases where the same policy is involved, cases decided under that act are often persuasive, but in the instant case those cited do not bear out appellant's contentions. From *National Labor Relations Board* v. *Lunder Shoe Corp.,* 211 F.2d 284-286, he quotes: ". . . it is well established that a mere change of employers alone is not sufficient to nullify the certification of the employees' representative." Considered alone, this statement appears to lend some support to appellant's position but that case, like every other case that has come to our attention, merely holds that changes in ownership which are in reality subterfuges adopted for the purpose of evading the obligations imposed by collective bargaining agreements already in force will be declared to be binding on the successors of the original contracting employer. Appellant failed to allege any facts that would bring this case within such rules or to show either an express or implied assumption by respondents of the obligations of the agreement.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.