AMERICAN TELEPHONE AND TELE-GRAPH COMPANY; Lucent Technologies, Inc., Petitioners–Appellees,

v.

UNITED COMPUTER SYSTEMS, INC., Respondent–Appellant.

No. 99–56846.

D.C. No. CV–99–06080–RSWL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2001.

Decided April 16, 2001.

---

Before LEAVY, TROTT, and SILVERMAN, Circuit Judges.

### MEMORANDUM*

United Computer Systems, Inc. (UCS) timely appeals the district court's judgment confirming an arbitral panel's denial of its claims against AT & T and Lucent Technologies, Inc (AT & T). We have jurisdiction under 28 U.S.C. § 1291 and we affirm. Because the parties are familiar with the facts of this case, we recount them here only as necessary to explain our decision.

A. Governing Law.

The first issue we must decide is what law governs the parties' arbitration. Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (FAA), parties are free to enter into contracts providing for arbitration under rules established by state law rather than under rules established by the FAA. *Volt Infor. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478–79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *La-Pine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 889 (9th Cir.1997). The question is one of contract interpretation: whether the parties to this contract chose federal, California, or New Jersey law to govern their arbitration.

UCS asserts that AT & T and UCS "agreed to abide by California law ." This is incorrect. First, the portion of the contract cited by UCS in support of its assertion selects California as the forum state

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

for arbitration; it does not select California law as the governing law. Instead, the contract provides that any arbitration shall be "in accordance with the rules of the American Arbitration Association then in effect." Second, the contract contains a "CONTROLLING LAW" provision stating that it "shall be construed and controlled by the laws of the State of New Jersey."

UCS asserts that, nonetheless, California arbitration law applies because that was the intent of the parties. This argument fails as well. Other than the parties' choice of California as the forum state, UCS submitted no evidence that the parties intended California arbitration law to govern their arbitration.

The contract between UCS and AT & T is similar to the contract reviewed by the Supreme Court in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), which contained a choice-of-law provision that selected New York law, and an arbitration provision stating that "any controversy" arising out of the transaction between the parties "shall be settled by arbitration" in accordance with the rules of the National Association of Securities Dealers. *Id.* at 59. The Supreme Court stated that the contract "should be read to give effect to all its provisions and to render them consistent with each other," and concluded that the contractual provision choosing the law of a particular state encompasses the substantive law of that state, but does not encompass the law of that state with respect to the allocation of authority or power between the courts and the arbitrators. *Id.* at 63–64.

■ Applying *Mastrobuono* to this appeal, grounds for vacatur of the award are controlled by the FAA rather than New Jersey law, because a state law concerning the extent to which an arbitral award is reviewable by the courts and the grounds upon which courts may vacate such an award affects the allocation of authority between courts and arbitrators. *Id.* at 63–64; *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1212–13 (9th Cir.1998); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000).

B. The Arbitration Award.

UCS makes thirteen arguments in support of its assertion that the district court erred when it denied UCS's motion to vacate the award. We consider each of these within the framework of section 10 of the FAA which lists the grounds that may form the basis for vacatur of an arbitration award. These grounds include proof that an award was procured by corruption, fraud or undue means, resulted from an arbitrator's evident partiality, corruption, or misconduct which prejudiced the rights of any party, or that the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(1)-(4)(2000). "[F]ederal court review of arbitration awards is extremely limited. It is generally held that an arbitration award will not be set aside unless it evidences a manifest disregard for law." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir.1992) (citation and quotations omitted).

1. *Costello's prior knowledge of disputed evidentiary facts.*

■ UCS argues that Costello's disqualification was mandatory because he had prior personal knowledge of disputed evidentiary facts. Alternatively, UCS argues that the failure of the American Arbitration Association (AAA) to disqualify Costello because of his prior knowledge meant that the award was procured through "undue means." The district court did not clearly err when it found that UCS had waived this objection by failing to raise it in a timely manner. *See Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427

(9th Cir.1996). Moreover, the AAA's denial of UCS's request to disqualify Costello did not cause the award to be procured by undue means. *See A.G. Edwards,* 967 F.2d at 1403.

■ UCS also argues that Costello's failure to disclose his 1991 contact with Klinger and Stanwyck constitutes a basis for vacatur. Failure to disclose information is not a ground for vacating an arbitration award under the FAA.

### 2. *Request for Costello's Curriculum Vitae.*

■ UCS argues that the request for Costello's curriculum vitae created "evident partiality" requiring vacatur under federal law. The party challenging the arbitration decision has the burden of showing partiality. *Woods,* 78 F.3d at 427. The integrity of the arbitrator's decision is directly at issue in actual bias cases, where "the court must find actual bias." *Id.* UCS did not carry its burden of showing that the request for Costello's C.V. caused him to be biased in favor of AT & T.

### 3. *Costello's 1997 Contact with Klinger.*

■ UCS argues Costello's inquiry concerning Klinger's representation of Stanwyck was an ex parte communication constituting corruption. "Ex parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award." *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1025 (9th Cir.1991). UCS does not assert that Costello's communication with Klinger caused it any disadvantage. Moreover, Klinger was never called as a witness in the arbitration proceeding. Accordingly, we reject this as a ground for vacating the award.

### 4. *Costello's December 24, 1998 memo.*

■ UCS asserts that Costello's statement in his December 24, 1998 memo that Stanwyck had agreed at the meeting on November 10 "that the correspondence I sent to Mr. Stanwyck in 1981[sic] will not affect my ability to serve in this arbitration," was false, constitutes corruption, and requires vacatur under 9 U.S.C. § 10(a)(2). This statement does not constitute corruption. Three other attorneys present at the November 10 meeting shared Costello's view that Stanwyck had so agreed.

### 5. *Objection to Cutliff's testimony.*

■ UCS asserts misconduct requiring vacatur occurred when Costello sustained AT & T's objection to the testimony of Lee Cutliff. Under § 10(a)(3) a court may vacate an arbitration award where "the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy." However, "a showing of prejudice is a prerequisite to relief based on an arbitration panel's evidentiary rulings." *Employers Ins. of Wausau v. National Union Fire Ins.,* 933 F.2d 1481, 1490 (9th Cir.1991). UCS made no showing of prejudice. Thus, we reject this argument for vacatur.

### 6. *Costello's unilateral order.*

We reject UCS's assertion that Costello exceeded his powers on December 24, 1998, when he unilaterally ordered Stanwyck to file and serve papers in response to a motion by AT & T. UCS requested that discovery issues be resolved unilaterally and suggested Costello as the decision-maker. The arbitral panel designated Costello to decide discovery disputes.

### 7. *The AAA's Conflict of Interest.*

■ UCS asserts that the award was procured by "corruption, fraud, or undue means," because at the time AAA was

deciding whether to disqualify Costello, AAA was soliciting and receiving financial contributions from AT & T. UCS further asserts that AAA had a conflict because it had a business and social relationship with Costello. UCS's assertions about AAA do not provide a basis for vacatur under the FAA.

8. *Failure to Decide UCS's Antitrust Claim.*

 UCS asserts that the arbitral panel failed to decide its claim for antitrust violations. The decision of the arbitral panel states: "Claimant United Computer Systems, Inc. is denied all recovery on all claims and counterclaims made herein." UCS submitted no evidence that the panel's decision did not encompass its antitrust claim. Moreover, the panel made several preliminary rulings related to that claim. "[A]rbitrators are not required to state the reasons for their decisions." *A.G. Edwards & Sons, Inc.*, 967 F.2d at 1403. This rule "presumes the arbitrators took a permissible route to the award where one exists." *Id.* Thus, we conclude that the arbitrators decided UCS's antitrust claim.

9. *Inconsistency with Prior Ruling.*

We reject UCS's assertion that the award is inconsistent with a prior arbitral panel ruling that UCS's motion to disqualify counsel was moot.

10. *The Panel Lacked Authority to Decide that All Claims Could Have Been Decided in This Arbitration.*

UCS argues that the arbitral panel exceeded its authority when it stated that "all claims arising out of or relating to the License Agreement either have been or could have been litigated in this arbitration." The arbitration clause encompasses "any controversy or claim arising out of or

relating to this Agreement." Thus, the arbitral panel had authority to make this decision. Moreover, the issue was raised during the arbitration and UCS agreed that it had asserted all claims against AT & T. Thus, this argument lacks any merit.

11. *Costello's "Additional Misconduct".*

Contrary to UCS's assertion, Costello's conduct during the March 1, 1999, arbitration session when UCS attempted to serve Costello with the complaint it had filed in state court naming him as a defendant is not a basis for vacatur of the award.

12. *Failure to Decide Issue of Standing.*

 UCS asserts that the arbitral panel failed "to evidence any cognizance of UCS's's" claim that AT & T did not have standing. UCS initiated the arbitration, naming AT & T and Lucent as respondents. Moreover, there is no requirement that arbitrators address each claim separately. *Id.*

13. *Failure to Give Res Judicata Effect to Arbitration I.*

As its final argument, UCS claims that the arbitral panel ignored the res judicata effect of an earlier arbitration. The arbitration that is the subject of this appeal raised claims separate from those raised in the earlier arbitration. Thus, there could be no res judicata effect.

CONCLUSION

The judgment of the district court is AFFIRMED.[1]

---

1. UCS's motion to dismiss for lack of jurisdic- tion is denied.

SILVERMAN, Circuit Judge, concurring.

I agree with the disposition of this case. However, because UCS's eleventh-hour Motion to Dismiss for Lack of Jurisdiction was patently frivolous, I would grant AT & T's Request for Sanctions.