298 F.3d 756
 UNITED COMPUTER SYSTEMS, INC., a California corporation, Plaintiff-Appellant,
v.
AT & T CORPORATION, a New York corporation; AT & T Information Systems Inc.; AT & T Technologies, Inc.; Lucent Technologies Inc., a Delaware corporartion; The National Cash Register Company, a Maryland corporation; Jan Stredicke, Defendants-Appellees.
 No. 00-55768.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted January 14, 2002.
 Filed May 31, 2002.
 As Amended on Denial of Rehearing July 22, 2002.
 
 COPYRIGHT MATERIAL OMITTED Steven J. Stanwyck, The Stanwyck Firm, APC, Los Angeles, CA, for the plaintiffs-appellants.
 William J. Kramer, Orrick, Herrington & Sutcliffe LLP, for defendants-appellees AT & T Corp., Lucent Technologies, Inc. and NCR Corp.; Richard W. Page, The Page Firm, APC, San Diego, CA, for defendant-appellee Jan Stredicke.
 Appeal from the United States District Court for the Central District of California Ronald S.W. Lew, District Judge, Presiding. D.C. No. CV-00-01640-RSWL.
 Before SCHROEDER, Chief Judge, CUDAHY,* and McKEOWN, Circuit Judges.
 CUDAHY, Circuit Judge:
 
 
 1
 In 1986, United Computer Systems (UCS) signed a software licensing and development agreement with a company that later merged with its corporate parent, AT & T. This agreement contained a clause that purportedly made arbitration the exclusive means for resolving any claims or controversies between the parties arising under the agreement. The present case involves an action for arbitration by UCS against AT & T that has yet to be adjudicated by an arbitration panel because counsel for UCS,[1] with a singular obstinacy demonstrated throughout this litigation, filed suit in a California state court rather than pay the filing fee demanded by the American Arbitration Association (AAA). In an effort to destroy diversity jurisdiction under 28 U.S.C. § 1332, UCS also named Jan Stredicke, an AAA administrator, as a defendant. Nevertheless, on a theory of fraudulent joinder, AT & T successfully removed this case to federal court pursuant to 28 U.S.C. § 1441. The district court then dismissed all claims against Stredicke and three corporate defendants, AT & T, Lucent and NCR.[2] The district court also granted the corporate defendants' motion for sanctions against UCS. The district court entered a total of five judgments against UCS, which are now before this court on appeal. For the following reasons, we AFFIRM in part, REVERSE in part, VACATE in part and REMAND to the district court for further proceedings consistent with this opinion.
 
 I.
 
 2
 In 1986, AT & T Information Systems, Inc. (AT & T-IS), then a subsidiary of AT & T, entered into a Software Licensing and Development Agreement (the Agreement) with UCS. According to the Agreement, "Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in the state of California in accordance with the rules of the American Arbitration Association then in effect." Prior to this case, UCS initiated three prior arbitrations arising from disputes arising under the Agreement. Arbitrations II and III had been consolidated by the AAA, and on June 11, 1999, an arbitration panel rendered a decision for AT & T and Lucent (NCR being no longer a party to the dispute), denying all of UCS's claims. The panel determined that "[1] the License Agreement was terminated no later than January 15, 1993, and [2] all claims arising out of or relating to the License Agreement either have been or could have been litigated in this arbitration." On September 20, 1999, the Arbitration II/III ruling was confirmed by a federal district court. UCS then appealed to this court, proffering thirteen separate grounds for vacatur, which we summarily rejected in an unpublished memorandum decision. See American Tel. & Tel. Co. v. United Computer Systems, Inc., 7 Fed.Appx. 784 (9th Cir. 2001).
 
 
 3
 On October 29, 1999 — after the district court confirmed the award in Arbitration II/III but before we upheld its judgment on appeal — UCS photocopied its complaint from Arbitration III and served it again as a statement of claims seeking yet another arbitral award (Arbitration IV). This latest effort now gives rise to the controversy currently before this court. On November 11, 1999, Jan Stredicke, an employee of the AAA in its Los Angeles office, sent UCS a letter advising the company that a $2,000 filing fee was required before the AAA could administratively consider Arbitration IV. Stredicke's letter also advised UCS that the corporate defendants objected to Arbitration IV as being duplicative of the claims previously resolved in Arbitration II/III.
 
 
 4
 As indicated, Arbitration IV has never taken place because UCS has not come up with the $2,000 filing fee but has instead commenced a lawsuit in Los Angeles Superior Court. Under various legal theories arguably premised on the Agreement, UCS named Stredicke and the various AT & T corporate entities as defendants, demanded a jury trial and sought damages and a declaratory judgment compelling arbitration. On a theory of fraudulent joinder, the corporate defendants successfully removed the case to federal court. On April 3, 2000, the district court dismissed, under Fed.R.Civ.P. 12(b)(6), all claims against Stredicke. Because the district court had recently confirmed an earlier arbitration award based on the same set of operative facts as those underlying the current dispute, the district court ruled on April 4, 2000 that the doctrine of res judicata barred UCS's claims against AT & T, Lucent and NCR. An order denying UCS's motion to remand to state court was entered on April 14, 2000. And on the same day, UCS filed a Rule 60(b) motion for relief from judgment in light of this court's decision in Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126 (9th Cir.2000). This motion was denied on May 25, 2000. AT & T then filed a motion for sanctions against UCS and its counsel, Steven Stanwyck, which was granted on June 28, 2000.
 
 
 5
 On May 1, 2000, before the district court had ruled on the motion for reconsideration or the motion for sanctions, UCS filed its original notice of appeal, which referenced only the orders entered on April 3 and 14 (and omitted the Stredicke dismissal, which was entered on April 4). On July 14, 2000, UCS filed an amended notice of appeal, now referencing the April 4 order (Stredicke's dismissal), the May 25 order (denial of the Rule 60(b) motion) and the June 28 order (sanctions).
 
 II.
 
 6
 Denial of a motion to remand a case to state court for lack of removal jurisdiction is reviewed by this Court de novo. See Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 747 (9th Cir.1993) (citing Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1285 (9th Cir.1989)). A decision concerning the arbitrability of a dispute is a question of law reviewed de novo. See Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir.1991). "[A] district court's imposition of sanctions pursuant to its inherent power is reviewed for an abuse of discretion." F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc., 244 F.3d 1128, 1135 (9th Cir.2001) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Findings of fact that underlie a district court's legal conclusions are reviewed for clear error.[3] See Alyeska Pipeline Service Company v. Kluti Kaah Native Village of Copper Center, 101 F.3d 610, 612 (9th Cir.1996) (citing Fed.R.Civ.P. 52(a)). "An appellate court must accept the lower court's findings of fact unless the appellate court is left with the definite and firm conviction that a mistake has been committed." Gonzalez-Caballero v. Mena, 251 F.3d 789, 792 (9th Cir.2001).
 
 
 7
 UCS appeals the following judgments: (1) the dismissal against Stredicke; (2) the denial of its motion to remand to state court; (3) the dismissal against the corporate defendants based on res judicata; (4) the denial of its Rule 60(b) motion for reconsideration; and (5) the sanctions award against UCS and Stanwyck in the amount of $8,000.
 
 A.
 
 8
 As a threshold matter, both UCS's appeal of the Stredicke dismissal and the denial of the Rule 60(b) motion are untimely. The judgment against Stredicke was entered by the district court on April 4, 2000. Under Fed.R.App. P. 4(a)(1)(A), UCS had thirty days, until May 4, 2000, to file its notice of appeal. The Federal Rules of Appellate Procedure state that a "notice of appeal must ... (B) designate the judgment, order, or part thereof being appealed." Fed.R.App. P. 3(c)(1). In this case, the original notice of appeal (specifying only the April 3 and April 14 judgments) was filed before the district court made its ruling on the Rule 60(b) motion. Since that ruling was entered on May 25, 2000, the appeal of the April 3 and the April 14 judgments became effective on that date. See Fed. R.App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). Even if we assume that the filing deadline for the Stredicke dismissal was thirty days after the court entered the denial of the Rule 60(b) motion (entered on May 25, 2000), which is a plausible but not necessarily correct reading of Fed. R.App. P. 4(a)(4)(A), the latest possible date for filing a timely appeal would have been June 25, 2000. In this case, however, UCS did not file its amended notice of appeal until July 14, 2000.
 
 
 9
 In summary, this court has jurisdiction only over the April 3rd judgment dismissing the corporate defendants, the April 14th judgment denying the motion to remand to state court and the June 27th judgment imposing sanctions on UCS. Although we agree with the corporate defendants that the appeal of the Rule 60(b) ruling is untimely, the merits of that motion, which sought relief based on our ruling in Chiron, are nevertheless closely intertwined with the res judicata ruling leading to dismissal of the corporate defendants. But we will return to the importance of Chiron in a moment.
 
 B.
 
 10
 With respect to the removal of this case to federal court, the district court's order dismissing Stredicke contained all the findings requisite to placing this case squarely within our fraudulent joinder doctrine. If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent and "the defendant's presence in the lawsuit is ignored for purposes of determining diversity." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.2001) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987)). The district court found that Stredicke "is not a party to any relevant contract on which plaintiff could predicate a claim against her." Moreover, in reviewing UCS's complaint against Stredicke and the corporate defendants, it is readily apparent that all three claims against Stredicke are predicated (frivolously) on the Agreement between UCS and AT & T-IS. Under California law, "only a signatory to a contract may be liable for any breach." Clemens v. American Warranty Corp., 193 Cal.App.3d 444, 452, 238 Cal.Rptr. 339 (1987) (citing Gold v. Gibbons, 178 Cal.App.2d 517, 519, 3 Cal.Rptr. 117 (1960); Sessions v. Chrysler Corp., 517 F.2d 759, 760 (9th Cir.1975)). Because Stredicke was a fraudulently joined defendant, her citizenship is not relevant for purposes of diversity jurisdiction. See Morris, 236 F.3d at 1067; McCabe, 811 F.2d at 1339.
 
 
 11
 Because UCS failed to timely appeal the Stredicke dismissal, we need not consider the circumstances of the Stredicke joinder in any greater detail. However, we must further address the denial of UCS's motion to remand to state court because UCS offers additional, alternative grounds for finding the removal to be improper: (1) the notice of removal was untimely under 28 U.S.C. § 1446(b), and (2) at least one of the corporate defendants is a citizen of California, thus destroying diversity jurisdiction under 28 U.S.C. § 1332. Both of these arguments fail.
 
 
 12
 On the issue of timeliness, UCS states that it served notice on Stredicke on December 9, 1999, which it claims commenced the thirty-day removal period provided in § 1446(b). UCS points to Teitelbaum v. Soloski, 843 F.Supp. 614 (C.D.Cal. 1994), for the proposition that the removal period in a case involving multiple defendants commences with service on the first party. See id. at 615 ("Because all defendants must join [the § 1446(a) motion], the 30-day period for removal [under § 1446(b)] commences to run from the date the first defendant receives a copy of the complaint."). Teitelbaum is an example of the "first-served" rule, which has been apparently adopted by the majority of courts that have addressed this issue. See McAnally Enterprises, Inc. v. McAnally, 107 F.Supp.2d 1223, 1226-28 (C.D.Cal.2000) (collecting cases on majority "first-served" rule and minority "last-served" rule under § 1446(b) and adopting majority position). Since notice of removal was not filed until February 15, 2000, UCS maintains that it is untimely. Under UCS's proposed construction of § 1446(b), the corporate defendants' right to remove this case to federal court would be extinguished before they were first notified of the existence of the lawsuit.
 
 
 13
 In addition to the fact that UCS's proposed standard would encourage unfair litigation tactics, it ignores the crucial fact that the first-served defendant in this case was fraudulently joined. Although the usual rule is that all defendants in an action in a state court must join in a petition for removal, see Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 393, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring) ("Removal requires the consent of all the defendants." (citing Chicago, R.I. & P.R. Co. v. Martin, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900))); Ely Valley Mines, Inc., v. Hartford, 644 F.2d 1310, 1314 (9th Cir.1981) (discussing general unanimity requirement), the "rule of unanimity" does not apply to "nominal, unknown or fraudulently joined parties," See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n. 1 (9th Cir.1988) (emphasis added). If the fraudulence of a defendant's joinder is irrelevant for purposes of determining diversity, and there is no obligation to join such a defendant in a removal petition, there is no good reason why date of service on a fraudulently joined defendant should commence the thirty-day time period for removal under § 1446(b). See 14C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3732, at 330-31 & n. 58 (3d ed.1998) (collecting cases for the proposition that "the thirty-day time limits prescribed in Section 1446(b) will be ignored when removal is sought on the ground that some defendants have been joined fraudulently to prevent removal"). The notice of removal in this case was therefore timely.[4]
 
 
 14
 UCS next argues that removal under § 1441 was improper because at least one of the corporate defendants is a citizen of California. In determining whether there is diversity of citizenship between corporate parties, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Tosco Corp. v. Communities For a Better Environment, 236 F.3d 495, 499 (9th Cir.2001) (quoting 28 U.S.C. § 1332(c)(1)). Assuming that reliance on the state of incorporation does not settle the issue of jurisdiction, the "principal place of business" is determined by the following two-part inquiry: (1) in what state does a "substantial predominance" of corporate activity take place? or (2) if the corporation's activities are not predominant in a single state, then the principal place of business is where the majority of its executive and administrative functions are performed. Id. at 500. It is relevant that a defendant who removes an action from state court to federal district court bears the burden on appeal of establishing that removal was proper. See Duncan v. Al Stuetzle, 76 F.3d 1480, 1485 (9th Cir.1996) (citing Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 932 (9th Cir.1994)).
 
 
 15
 In this case, the corporate defendants have met this burden by submitting the affidavits of knowledgeable company officials specifying the state of incorporation and providing statistics showing the number of corporate employees, income, sales and the location of top management, since these factors determine corporate activity in California or elsewhere. This detailed information sufficiently demonstrates that none of the corporate defendants is a citizen of California for the purposes of § 1332(c). The district court correctly denied UCS's motion to remand to the state court.
 
 C.
 
 16
 The next issue is whether the district court erred in granting the corporate defendants' motion to dismiss on the grounds that UCS's claims were barred by the res judicata effect of the prior judgment upholding Arbitration II/III. Although UCS offers several convoluted arguments to establish that the case now before the court is not barred by the final judgment confirming Arbitration II/III, these arguments should be addressed to an arbitration panel rather than to a federal court. This case is controlled by our earlier decision in Chiron, which held that "a res judicata objection based on a prior arbitration proceeding is a legal defense that, in turn, is a component of the dispute on the merits and must be considered by the arbitrator, not the court." 207 F.3d at 1132 (citing National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129 (2d Cir.1996)). Although the corporate defendants make a forceful argument that this case is nothing more than a naked attempt to re-litigate claims that were finally laid to rest in Arbitration II/III, the merits of the underlying dispute have no bearing on the question of which forum can render a decision on a res judicata defense. Here, the language of the Agreement is crystal clear: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." (emphasis added).
 
 
 17
 We must also emphasize that confirmation of the Arbitration II/III judgment by a federal court has no bearing on resolution of the res judicata issue. In Chiron, the parties entered into a business agreement containing an arbitration clause similar to the one at issue here. Id. at 1131 (stating that "[t]he parties' arbitration clause is broad and far reaching: `Any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement shall be settled by binding Alternative Dispute Resolution'"). The parties subsequently had a dispute that resulted in an arbitration award. When a second dispute arose, the defendant refused to participate in the arbitration proceedings on the grounds that plaintiff's claims were the same as those that were addressed in the first arbitration. Id. at 1129. The plaintiff then sued in federal court, requesting an order to compel arbitration under § 4 of the Federal Arbitration Act (FAA). Although the district court in Chiron entered such an order, it also granted the defendant's request that the parties' earlier arbitration be confirmed under § 9 of the FAA. Id. On appeal, this court rejected the defendant's argument that a confirmation of an earlier arbitration award invests a federal court with the authority to consider a res judicata defense in any subsequent suit. Id. at 1133.
 
 
 18
 The corporate defendants attempt to distinguish Chiron on the grounds that the defendant in that case was asserting the res judicata defense in the context of a motion to compel arbitration under § 4 of the Federal Arbitration Act. The corporate defendants argue that here, UCS has submitted its claims to the district court for a resolution on the merits. In fact, this is not a accurate description of the procedural posture of the case. In November 1999, UCS filed a five-count complaint in Los Angeles superior court. The first four causes of actions were premised on various theories of tort and contract liability and were accompanied by a request for damages. But the fifth cause of action was a request for a declaratory judgment under California law relating to the rights and obligations of the parties under the Agreement's arbitration clause. As a remedy indicated for the fifth cause of action, UCS's complaint explicitly requested "a declaration that Defendants, and each of them, must participate in the Arbitration pursuant to the Demand filed by the Plaintiff on October 29, 1999." When the present case was removed to federal court, both Stredicke and the corporate defendants promptly motioned the court for dismissal pursuant to Rule 12(b)(6), while UCS made a motion to have the case remanded to state court. Moreover, based on the transcript of oral argument before the district court on March 27, 2000, counsel for UCS clearly requested that the court compel the parties to arbitrate.[5] Chiron may therefore not be distinguished on the ground that here UCS has submitted its claims to the district court for resolution on the merits.
 
 
 19
 The corporate defendants also argue that UCS waived its right to arbitrate by requesting a jury trial. In the Ninth Circuit, arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts. See Hoffman Const. Co. v. Active Erectors, 969 F.2d 796, 798-99 (9th Cir.1992). The first two prongs of this test are satisfied by UCS's state court complaint, requesting a declaratory judgment with respect to the rights and obligations of the parties under the Agreement's arbitration clause, but also requesting a jury trial and $16 million in damages. In addition, the filing of this lawsuit by UCS, rather than paying the $2,000 administrative fee to the California AAA to commence Arbitration IV, is also inconsistent with the terms of the arbitration clause.
 
 
 20
 The corporate defendants' case, however, falters on the prejudice prong. AT & T argues that this third requirement of the waiver test has been satisfied because it has incurred substantial costs in litigating this matter in state and federal court, including the costs of this appeal. While this may be true, it must also be emphasized that UCS's request for damages and a jury trial never got past the pleading stage; the district court proceedings involved primarily a motion to dismiss on the basis of res judicata. The issue of remedy was not raised in the course of litigating the motion to dismiss. In the event that UCS survived the motion to dismiss, it would have been forced to clarify the scope of its requested relief. Assuming that UCS withdrew its request for arbitration and, in response, the corporate defendants permitted the case to proceed to discovery and to a trial, an argument of prejudice based on litigation costs would be much more compelling. See Hoffman Construction, 969 F.2d at 799 (finding prejudice when plaintiff withdrew its arbitration request and defendant was subjected to the full litigation process in state court, including discovery, a trial, and a monetary judgment).
 
 
 21
 During oral argument, counsel for UCS requested that we remand to the district court with instructions to compel arbitration. While UCS may have taken this position to avoid waiver of its arbitration rights, and thus dodge the district court's res judicata ruling, its legal options are rapidly dwindling. The arbitration clause at issue here requires that "any controversy or claim" arising from the Agreement be resolved by arbitration, including arguably frivolous claims that have already been addressed in an earlier arbitration. Since the arbitration clause also binds the parties to the rules of the California AAA, UCS will have to abide by these administrative requirements, including the payment of the necessary filing fees, in order to obtain the sought-after relief. Contrary to statements made by counsel for UCS during oral argument, the Agreement does not give either party a unilateral right to demand an arbitral forum that is not affiliated with the California AAA.
 
 
 22
 When the district court dismissed all claims against the corporate defendants, the procedural posture of this case was, to say the least, unusual. Therefore, a few remaining points must be clarified. UCS originally filed a five-count complaint in state court with the fifth cause of action requesting a declaratory judgment under California law as to the rights and obligations of the parties under the Agreement's arbitration clause. This case was then removed to the federal district court. Shortly thereafter, the court granted the corporate defendants' Rule 12(b)(6) motion on the grounds that all five counts were "barred in whole by the res judicata effect" of Arbitration II/III. As we have indicated, this ruling was contrary to Chiron. Particularly given the capacious language of the arbitration clause at issue here, the Federal Arbitration Act prohibits us from ruling on the merits of a substantive dispute between the parties to an arbitration agreement when they have indicated a desire to arbitrate. In this regard, we construe the fifth cause of action in UCS's state court complaint as a petition to compel arbitration under 9 U.S.C. § 4. This assessment is supported by statements of record, made by UCS before this court and the district court, that the purpose of this litigation is to compel Arbitration IV.
 
 
 23
 Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue. See Chiron, 207 F.3d at 1130 (citing 9 U.S.C. § 4; Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719-20 (9th Cir.1999)). In the case before us, the first prong remains in doubt, since there is no evidence that either NCR or Lucent ever entered into such an agreement with UCS. By contrast, AT & T acknowledges that it is a successor in interest by merger to the original signatory, AT & T-IS. Although it is at least possible that NCR and Lucent, which are apparently current or former subsidiaries of AT & T, have also assumed such an obligation through a similar corporate reshuffling, the burden remains upon UCS to demonstrate why either one of these entities should remain in this litigation.
 
 
 24
 Therefore, we vacate and remand to the district court with instructions to determine whether NCR and Lucent are parties to the Agreement or have obligations under it. However, before the district court commences any further proceedings relating to an order to compel arbitration, UCS must submit proof to the district court that it has properly initiated Arbitration IV by tendering the requisite filing fees to the California AAA. If this showing is not made within 60 days of this case's being returned to the district court, then the district court is instructed to dismiss with prejudice all counts remaining against the corporate defendants. To the extent that NCR and Lucent are not parties to the Agreement and are otherwise free of obligations under its arbitration clause, the remaining four counts brought against them must also be dismissed with prejudice. UCS's complaint against them is predicated wholly on duties that arise from the Agreement. See Fed.R.Civ.P. 12(b)(6); see also Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.1992) (ruling that leave to amend after Rule 12(b)(6) dismissal is appropriate only if there is a distinct, cognizable claim that could be stated, consistent with the facts and allegations set forth in the complaint).
 
 D.
 
 25
 The sole remaining issue is the appeal of sanctions imposed by the district court for violation of Local Rule 7.16.[6] The district court ruled that, in filing its motion for reconsideration, UCS "largely repeated its previous arguments that the Court has already considered and rejected" and stated that the Chiron case "does not support plaintiff's motions." In adopting AT & T's motion for sanctions, the district court also ruled that counsel for UCS "violated Local Rule 7.16, and further that the Motion for Reconsideration was frivolous and filed in bad faith."
 
 
 26
 Even if we acknowledge the possibility that UCS in its Rule 60(b) motion has regurgitated earlier arguments, it would be anomalous for this court to uphold sanctions against an attorney when the motion for reconsideration did contain the core of an argument that this court has relied upon to reverse the ruling of the district court. On March 27, 2000, the district court heard oral argument on the corporate defendants' motion to dismiss. On March 28, 2000, the very next day, this court issued its ruling in Chiron. The district court entered judgment for the corporate defendants on April 3, 2000, and UCS subsequently made a motion for reconsideration on April 13, 2000. Based on our review of UCS's filings with the district court to support the Rule 60(b) motion, our holding in Chiron supported the central argument advanced by UCS. Moreover, the text of Rule 7.16 specifically permits motions for reconsideration in light of legal authority that was not available at the time of the original decision. Since Chiron has served as the basis for our reversal of the district court, we believe that, as a matter of law, UCS's Rule 60(b) motion was not frivolous or filed in bad faith. We therefore reverse the judgment of sanctions against UCS and Mr. Stanwyck, which were based on an incomplete analysis of the merits.
 
 
 27
 That said, we acknowledge that counsel for UCS seems very close to pushing zealous advocacy beyond the breaking point. If UCS continues to seek legal redress against AT & T, it must do so before a panel of arbitrators according to the rules of the California AAA. From our perspective, it appears that UCS's detour into state and federal court has been a vexatious attempt to forestall the inevitable. While a federal district court cannot end this abusive cycle by making a dispositive ruling on a res judicata defense, it may certainly impose sanctions whenever a lawyer practicing before it vexatiously manipulates the litigation process. UCS is perilously close to this line, if not well beyond it. We do not rule out the possibility that the district court may find grounds, other than the ones upon which we have found reversal necessary, to impose sanctions on remand.
 
 III.
 
 28
 In summary, we DISMISS the appeal of the Stredicke judgment as untimely under Fed.R.App. P. 4(a)(1)(A) and AFFIRM the district court's denial of UCS's motion to remand to state court. Although the appeal of the Rule 60(b) ruling is also untimely, the issue here is inextricably entangled with the res judicata claim on which the district court relied to dismiss all claims against the corporate defendants. The appeal of this issue was timely filed. We therefore VACATE the judgment of the district court with respect to the corporate defendants' res judicata defense and REMAND to the district court for further proceedings consistent with this opinion, and further contingent upon UCS's satisfying the filing requirements of the California AAA. Finally, we REVERSE the imposition of sanctions by the district court. Finally, we order that each party shall bear its own costs.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 In 1991, the corporate entity UCS assigned all claims to its counsel, Steven J. Stanwyck. Therefore, while UCS is the putative injured party in this lawsuit, the real party in interest is Mr. Stanwyck
 
 
 [2]
 Although Lucent and NCR were never named parties to the Agreement, UCS has sought to include them in this litigation by reason of their current or past status as AT & T subsidiaries
 
 
 [3]
 According to the corporate defendants, the district court made three findings of fact: "(1) Stredicke is not a party to any relevant conduct; (2) in its motion to reconsideration, UCS repeated arguments that had been previously made, considered, and rejected; and (3) UCS filed its motion to reconsideration in bad faith." Appellee's Br. at 12
 
 
 [4]
 There is currently a split of authority on the construction of § 1446(b) when applied to multiple defendantsCompare Brown v. Demco, Inc., 792 F.2d 478, 482 (5th Cir.1986) (adopting "first served" rule); McAnally Enter., 107 F.Supp.2d at 1226-28 (collecting cases for both the "first served" and "last served" rules and adopting the first served rule), with Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir.1999) (applying "last-served" rule); Ford v. New United Motors Mfg., 857 F.Supp. 707, 709 (N.D.Cal.1994) (same). Because proper resolution of this issue requires that all defendants be properly joined, we express no opinion today on the propriety of either rule.
 
 
 [5]
 Quoting counsel for UCS, Steven Stanwyck, "Your Honor, this is a classic case of arbitration being the form agreed by the parties to address all the issues that are before the court. ... Everything, including standing, should be determined by the panel of arbitrators.... The plaintiff's rights in Arbitration One, which were mandated by the Ninth Circuit, would be impaired or destroyed if we were not allowed to proceed in Arbitration Four, on very much the same claims that AT & T proceeded in Arbitrations numbers Two and Three."
 
 
 [6]
 The text of Rule 7.16 reads as follows: "A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."